## Elton W. Scott *v.* Helen B. Scott
### (10968)

Peters, Parskey, Shea, Grillo and Spada, Js.

Argued June 2—decision released August 2, 1983

*Donna J. Brooks,* for the appellant (plaintiff).

*Jess H. Smith,* with whom, on the brief, was *George B. Simoncelli, Jr.,* for the appellee (defendant).

GRILLO, J. This appeal results from the denial by the trial court of a motion by the plaintiff to modify or to terminate an alimony award of $25 per week granted to the defendant.

The chronological history of court proceedings together with related facts culminating in the motion under consideration is as follows:

On August 9, 1974, the court, *Hon. Abraham S. Bordon,* state referee, dissolved the marriage of the parties and, in addition to the monetary award, ordered the plaintiff to transfer to the defendant his interest in the family residence located in Torrington, an automobile, and the plaintiff's interest in the family business, the Scott Manufacturing Company. In September, 1974, the plaintiff instituted an appeal to the Supreme Court from the judgment. In response to the defendant's motion to terminate the stay issued pursuant to Practice Book, 1963, § 661[1] filed on May 5, 1975, the plaintiff filed a financial statement dated May 23, 1975, listing his weekly net wages at $139.38. The motion to terminate the stay was subsequently granted.[2]

On July 30, 1975, the referee made a finding in accordance with Practice Book, 1963, § 618 wherein he stated "[i]t [the financial statement of the plaintiff] shows weekly net earnings of $139.38 by the plaintiff." It is this finding and its efficacy which represent the primary bone of contention between the parties on appeal.

---

[1] Practice Book, 1963, § 661 provided, in pertinent part that "if an appeal is filed, such proceedings [to enforce or carry out the judgment] shall be stayed until the final determination of the cause . . . ."

[2] This information was obtained from the file and record of this case in the Superior Court, Litchfield County. This court can take judicial notice of pertinent facts disclosed by the record in the Superior Court in a case before us on appeal. *Murphy* v. *Dantowitz,* 142 Conn. 320, 323, 114 A.2d 194 (1955).

Following the defendant's motion to dismiss for lack of diligence pursuant to Practice Book, 1963, §§ 696, 697, we dismissed the appeal on March 3, 1976. On May 7, 1981, the plaintiff filed a motion to modify or to terminate the alimony award. The motion was denied since the trial court found that no substantial change in circumstances had occurred. It is from the denial of this motion that the plaintiff now appeals.

In the present appeal, the plaintiff claims (1) that the trial court erred by readjudicating the factual finding of the court in 1974 as to the plaintiff's income and (2) that the denial of the motion for modification or termination of alimony was an abuse of discretion.

As to the first issue, the plaintiff argues that a significant basis for the determination of the $25 per week alimony award was Judge Bordon's finding that the plaintiff's income was $139.38 per week. Maintaining that the former finding was conclusive because it constituted a factual issue actually litigated and determined in the former action and essential thereto, the plaintiff argues that the defendant was estopped from challenging that finding in the present action.

The glaring deficiency in the plaintiff's argument is the fact that the affidavit of the plaintiff was filed on May 23, 1975, indicating the $139.38 figure was not presented to the referee until several months *after* the 1974 dissolution decree in response to the aforesaid motion of the defendant relating to the appeal. The referee did not, and obviously could not, have used facts in the 1975 affidavit as a basis for his order; its contents contain facts which did not exist at the time of the 1974 judgment. It is crystal clear that at the hearing in 1974, the *only* financial statement of the plaintiff before the court was one filed June 25, 1974, indicating an income of $98 per week. Interestingly

enough, the plaintiff himself, in his assignment of errors[3] relating to the referee's finding, stated that the court erred "[i]n predicating its finding on a financial affidavit filed by the Plaintiff in 1975 and not his financial affidavit of 1974, *when the case was determined.*" (Emphasis added.) While consistency has been the subject of derision by many philosophers and authors,[4] the practice of egregious inconsistency hardly merits one the Croix de Guerre.

The plaintiff now seeks to benefit from this $139.38 finding, which he himself had previously assigned as error, by claiming that the finding that he had net weekly earnings of $139.38 should be given collateral estoppel effect and that, since he is now earning only $99 per week, a substantial change in circumstances has occurred justifying a modification or termination of alimony. This the court cannot permit.

Even were we to assume that there exists a semblance of validity in the plaintiff's position that the $139.38 figure controls, his reliance on the doctrine of collateral estoppel is misplaced. " 'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action . . . .' " *Brockett* v. *Jensen,* 154 Conn. 328, 337, 225 A.2d 190 (1966), quoting 1 Restatement, Judgments § 68. In the present case, however, the parties had no opportunity to litigate the appropriateness of the determination that the plaintiff was earning $139.38 per week at the time of the dissolution. Because the plaintiff's appeal was dismissed for

---

[3] This rule requiring the filing of an assignment of errors upon appeal; Practice Book, 1963, § 622; has since been repealed. Practice Book, 1978, § 3030.

[4] E.g., Oliver Wendell Holmes, Sr., Aldous Huxley and John Sloan. Seldes, The Great Quotations (1968 Ed.), p. 222.

lack of prosecution, the defendant did not have occasion to challenge the finding and assign error relative to it.[5] Practice Book, 1963, §§ 622 and 623; see also *Hollingsworth* v. *Hollingsworth,* 180 Conn. 212, 429 A.2d 463 (1980). " '[P]ersons who, although parties to an action, do not have an opportunity of litigating between themselves the correctness of a determination which is the basis of the judgment for or against them, are not concluded, in a subsequent action between them, by such a determination.' " *Brockett* v. *Jensen,* supra, 338–39, quoting 1 Restatement, Judgments § 82. Under these circumstances, we conclude that the trial court was not bound by the $139.38 figure in its determination of the appropriateness of a modification or termination of the alimony award. Its use of the $98 figure was correct since that figure was the only one which could have been employed by the referee at the time of the dissolution and alimony award in 1974.

The plaintiff next attacks the trial court's denial of his motion for modification or termination of alimony. He argues that there was no basis in the evidence which could justify a continuation of the alimony award and that the decline in his weekly income from $139.38 in 1974 to $99 in 1981 fulfills the "substantial change in circumstances" requirement of General Statutes § 46b-86 (a).[6] Therefore, the plaintiff argues that the $25 per week alimony award should be modified or terminated accordingly.

---

[5] The finding was "[i]t [the financial statement of the plaintiff] shows weekly net earnings of $139.38 by the plaintiff." In addition to the potential challenge that the finding lacked evidential support, it was also violative of the rule that findings should recite facts and not evidence. *C.I.T. Corporation* v. *Cohen,* 117 Conn. 159, 161, 167 A. 102 (1933).

[6] General Statutes § 46b-86 (a) provides in pertinent part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

The plaintiff's argument must fail. We have already determined that his reliance on the $139.38 figure in the computation of the 1974 alimony award is totally inaccurate. The referee had only the $98 figure before him at the time of the dissolution. Since a comparison of the plaintiff's 1974 and 1981 financial statements reveals only a $1 *increase* in income ($98 income per week in 1974 to $99 per week in 1981), the trial court did not err in finding no "substantial change in circumstances."[7] In an appeal of this nature, every reasonable presumption will be made in favor of the correctness of the trial court's exercise of discretion; its decision will not be disturbed unless it acted illegally or unreasonably. *Cummock* v. *Cummock,* 188 Conn. 30, 35, 448 A.2d 204 (1982). Accordingly, we find that the trial court was correct in disallowing the plaintiff's motion to modify or terminate the alimony award.

The plaintiff further asserts that there should be modification or termination of alimony since the defendant has substantial assets and is able to work. This fact standing alone, however, does not justify a modification of an alimony award. "It is well settled in this jurisdiction that as a prerequisite to alimony modification the moving party must show a substantial change in circumstances . . . *which was not foreseen* at the time of the dissolution decree and arose subsequent to the entry of the original decree. . . ." (Emphasis added.) *Cummock* v. *Cummock,* supra, 34–35.

That there has been an improvement of the financial health of the defendant is evident from an examination of the record. For example, in 1974 the defendant had a net weekly income of $101.93; this figure

---

[7] The plaintiff's 1981 financial affidavit also revealed that at that time he was receiving food stamps and a rent subsidy from the federal government which paid three-quarters of his rent.

increased to $119.72 in 1981. The defendant's total liabilities also decreased from $2181 in 1974 to $201.72 in 1981. In addition, her total assets increased from a small, undeterminable amount to $64,244.26. This improved economic condition was, however, reasonably predictable at the time of the dissolution for a number of reasons. She was awarded the sole ownership of the family residence, valued in 1979 at $18,000 and in 1981 at $32,500. The summer cottage in which she had a one-half interest was hers at the time of dissolution; the property was sold in 1976 for $32,100. In addition, the defendant was awarded ownership of the family business via the transfer to her of 127 shares of stock of the Scott Manufacturing Co., of which she was secretary and treasurer. After the dissolution, she continued to receive a monthly "draw" which contributed to her improved financial status. Moreover, the defendant was a wage earner in 1974 and presumably continued to work until 1981. Since the trial court could reasonably view the present enhanced financial condition of the defendant as readily foreseeable at the moment of dissolution, the plaintiff has failed to meet his burden of proving a substantial change in circumstances not contemplated by the parties at the time of dissolution.[8]

The court did not abuse its discretion in denying the termination or modification.

There is no error.

In this opinion the other judges concurred.

---

[8] In effect, the plaintiff would have us now review the propriety of the 1974 award which he himself prevented by failing to prosecute the previous appeal.